UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-CIV-80522-MARRA/Matthewman

DIETMAR DUDE,

     Plaintiff,

vs.

BARRY G. RODERMAN, etc. et.al.,

     Defendant.

_____/

## MOTION TO DISMISS

COMES NOW, the Defendant, BARRY G. RODERMAN (hereinafter referred to as "Roderman") on his own behalf, and hereby files the following Motion to Dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and as grounds therefore would show:

MOTION

1.    The Plaintiff, DIETMAR DUDE (hereinafter referred to as the "Plaintiff") filed the Original Complaint against Roderman and the other Defendants in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida under Case No.: Case No.: 50-2016-CA-011067-XXXX-MB (hereinafter referred to as the "'067 Case") on or about September 28, 2016. (A copy of the Complaint without Attachments is attached hereto as Exhibit "A").

2.    The Plaintiff filed the Amended Complaint against Roderman and the other Defendants in the '067 Case on or about November 29, 2016. (A copy of the Amended Complaint without Attachments is attached hereto as Exhibit "B").

3.    The '067 Case was removed to federal district court by the Internal Revenue Service ("IRS") on or about July 18, 2017.

4. Following removal of this matter to Federal District Court the Plaintiff filed a Motion for Leave to file the Second Amended Complaint [DE-29] on or about July 6, 2017.

5. This Court entered an Order Granting the Motion for Leave to File the Second Amended Complaint [DE-62] on or about August 14, 2017.

6. In reviewing the Second Amended Complaint in the light most favorable to the Plaintiff it appears that the Plaintiff has attempted to state a cause of action against Roderman for (a) fraud in the concealment of a Settlement Agreement between Congress Management, LLC ("CMLLC") and Congress Plaza, LLC ("CPLLC") and/or the concealment of a Promissory Note and Mortgage between CMLLC and CPLLC and (b) conspiracy to commit fraud connected to the same transactions.

7. However, neither the Original Complaint, the Amended Complaint nor the Second Complaint alleges in detail how the Plaintiff (or its predecessor) detrimentally relied upon the alleged concealment on the part of Roderman.

8. As such, Roderman argues to this Court that the Plaintiff's failure to allege in detail how it detrimentally relied upon the alleged concealment of Roderman fails to set forth the required elements under the substantive law of the State of Florida for a cause of action for (a) fraud and (b) conspiracy to commit fraud, after three (3) attempts at framing the pleadings constitutes a failure to state a claim under which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure.

9. Roderman offers the following Memorandum of Law in support of the foregoing Motion to Dismiss.

## MEMORANDUM OF LAW

Rule 12(b)(6), Federal Rules of Civil Procedure provides that, "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion . . . failure to state a claim upon which relief can be granted." Rule 12(b)(6) further states that, "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *See, Pierson v. Ocwen Loan Servicing, LLC*, Case No.: 16-cv-62840 at *2 (S.D. Fla. Feb. 15, 2017). "Although a complaint 'does not need detailed factual allegations,' it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. "A complaint may not rest on 'naked assertion[s]' devoid of further factual enhancement." *Id*. "Factual allegations must be enough to raise a right to relieve above the speculative level." *See, Twombly,* 550 U.S. at 555.

When reviewing a motion under Rule 12(b)(6) a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible interferences derived from those facts in favor of the Plaintiff. *See, Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002). "However, this tenet does not apply to legal conclusions, and courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *See, Twombly,* 550 U.S. at 555. "Courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suffers lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *See, Am. Dental Ass'n v. Signa Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See, Wilchombe v. TeeVee Toons, Inc.*, 55 F.3d 1337, 1340 (11th Circuit. 2005). A document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity. *See, Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002).

Florida Courts, which provides the substantive law for the case at bar clearly stands for the proposition that, "while the conduct elements of the claims for fraudulent concealment and conspiracy to commit fraudulent concealment were established by virtue of the *Engle* decision, an *Engle* progeny plaintiff still must prove *detrimental reliance* upon the [defendant's] misinformation." *See, RJ Reynolds Tobacco Co. v. Buonomo*, 138 So.3d 1049, 1051-52 (Fla. 4th DCA 2013). *See also, RJ Reynolds Tobacco Co. v. Calloway*, 201 So.3d 753 (Fla. 4th DCA 2016). The Supreme Court of Florida has consistently held that fraud cannot be committed absent detrimental reliance by the plaintiff. *See, Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985).

In the case at bar, no matter how this Court may accept the Plaintiff's allegations and provide all plausible inferences of the allegations in favor of the Plaintiff, there is just no allegation that stands for proposition that the Plaintiff (or his predecessor) relied upon any statement or concealment of Roderman to his detriment. When you cut through all of the Plaintiff's hyperbole, this case is about the enforcement of a Settlement Agreement between CMLLC and CPLLC to which Roderman was not a party. The allegations against Roderman are conclusory and overreaching. Without any allegation setting forth in detail detrimental reliance of the Plaintiff of a misrepresentation or concealment on the part of Roderman, the Plaintiff cannot state a cause of action against Roderman upon which relief can be granted. The Plaintiff has not alleged the requisite elements of fraud under Florida Law.

Under the circumstances alleged in the Second Amended Complaint, Roderman is entitled to a dismissal of the causes of action against him. Further, as the Plaintiff has attempted to allege these scurrilous causes of action on three (3) attempts and still cannot succeed in doing so, the Motion to Dismiss should be granted with prejudice. Finally, the Court should consider an award of Sanctions against the Plaintiff and his attorney under this Court's inherent authority and Rule 11 as the allegations against Roderman are frivolous.

## CONCLUSION

For the reasons set forth above, Roderman would strongly encourage this Court to enter an Order granting the Motion to Dismiss with prejudice, and enter the appropriate award of sanctions against the Plaintiff and the attorney that signed the Second Amended Complaint.

Respectfully submitted on August 24, 2017

Barry G. Roderman & Associates, P.A
633 SE 3rd Avenue, Suite 4R
Fort Lauderdale, FL 33301-3151
Tel.: (954) 761-8810
Fax: (888) 246-9753
Service: mail@barryroderman.com
Service 2: bgr@barryroderman.com

By: /s/ Barry G. Roderman
Barry G. Roderman, Esquire
Fla. Bar No.: 105637

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of Court and served to counsel of record via the CM/ECF system on the 24th day of August 2017.

By: /s/ Barry G. Roderman

EXHIBIT "A"

Filing # 47053056 E-Filed 09/28/2016 05:02:32 PM

IN THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DIETMAR DUDE,

     Plaintiff,

vs.

CONGRESS PLAZA, LLC,
a Florida Limited Liability Company; and
CONGRESS 1010, LLC,
a Florida Limited Liability Company,

     Defendant.

_____/

Case:
Division:

## COMPLAINT FOR BREACH OF CONTRACT

    DIETMAR DUDE, Plaintiff, ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against the Defendants, CONGRESS PLAZA, LLC, a Florida Limited Liability Company ("Congress Plaza"), and CONGRESS 1010, LLC, a Florida Limited Liability Company ("Congress 1010"), which is named as a nominal defendant, and alleges in support thereof:

## STATEMENT OF JURISDICTION AND VENUE

    1.    The Plaintiff, at all material times, was over the age of 18, a citizen and resident of Germany, and is otherwise *sui juris*.

    2.    Congress Plaza is a limited liability company organized and existing under the laws of the State of Florida, with a principle place of business in Broward County, Florida.

    3.    Congress 1010 is a limited liability company organized and existing under the laws of the State of Florida, with a principle place of business in Broward County, Florida.

4.     This is an action for damages in excess of $15,000.00, exclusive of interest, costs, and attorney's fees. Jurisdiction is thus proper in this Court pursuant to Florida Statute § 542.30.

5.     The contract at issue contains a choice of venue clause which provides that "venue for any proceeding regarding this Agreement shall lie exclusively in Palm Beach County, Florida." (See **Exhibit A**, ¶ 18.) Venue is therefore proper in this Court.

## STATEMENT OF FACTS

6.     Plaintiff formed Congress Management, LLC ("Congress Management") on or about February 17, 2006 and voluntarily dissolved the company on or about March 10, 2015. At all material times, Plaintiff was the sole member of Congress Management and served as the Managing Member from 2010 until dissolution of the company.

7.     Plaintiff's brother, Harald Dude, acted as agent for Plaintiff, and as registered agent for Congress Management from 2007 until the company was voluntarily dissolved. Harald Dude also acted as Manager of Congress Management from 2007 until 2010. At no material time did Harald Dude hold a membership interest in Congress Management.

8.     On or about January 19, 2010, Congress Shopping Center, Ltd., a Florida Limited Partnership ("Congress Shopping Center"), executed a Promissory Note in favor of Congress Management in the amount of $2.33 million. The debt was secured by a mortgage against six parcels of land ("Six Parcels") located in Palm Beach County, Florida, which are identified by the following Parcel Control Numbers: (a) 00-43-43-29-05-000-0090; (b) 00-43-43-29-05-000-0150; (c) 00-43-43-29-05-000-0160; (d) 00-43-43-29-05-000-0190; (e) 00-43-43-29-05-000-0200; and (f) 00-43-43-29-05-000-0350. This mortgage was recorded in the Official Records of Palm Beach County on or about January 22, 2010. (The Note and Mortgage described in this Paragraph is titled as, and is hereafter referred to as, the "Second Mortgage.")

9.     On or about May 28, 2010, Congress Plaza entered into a Settlement Agreement ("Agreement") with Congress Management. (A copy is attached as **Exhibit A.**) Pursuant to that Agreement, Congress Plaza agreed to purchase the Second Mortgage. As partial payment, Congress Plaza executed a Promissory Note in the amount of $2.31 million, secured by a mortgage against the Six Parcels. Congress Management in turn assigned the Second Mortgage to Congress Plaza, which failed to record the Assignment in the Official Records of Palm Beach County. (True and correct copies of the original Note and Mortgage, hereinafter referred to as the "Subject Note and Mortgage," are attached as **"Composite B, Exhibits 1 and 2"** respectively.)

10.     On or about July 21, 2010, Congress Shopping Center executed a deed conveying the Six Parcels to Congress Plaza in fee simple absolute. The deed was recorded on or about October 5, 2010.

11.     On or about October 15, 2012, Congress Plaza requested that Congress Management satisfy the Subject Note and Mortgage as to the parcels ending in 0190, 0200, and 0350 in exchange for an initial payment of $400,000 and a modification of the terms of payment with regard to the remaining principal balance on the Subject Note ("Requested Modification"). (A copy of the Requested Modification is attached as **Exhibit C.**) Congress Management refused to sign the Requested Modification. The Requested Modification remains unsigned by Congress Management, Plaintiff, or Plaintiff's agent, Harald Dude. Congress Management did accept the $400,000.00 strictly as payment towards the principle of the debt. Further principle payments as contemplated by the Requested Modification were not made by Congress Plaza, and Congress Management did not consent to the Satisfaction of the Mortgage as to the parcels ending in 0190, 0200, and 0350.

12.     On or about October 29, 2012, Congress Plaza executed a deed purporting to

convey the parcels ending in 0190, 0200, and 0350 to S&J Property Holdings, LLC; however, that deed was recorded only as to the parcels ending in 0190 and 0200. Moreover, the deed was executed without the consent of or payment to Congress Management, which was owed payments on the Subject Note and Mortgage.

13.     On or about December 5, 2012, and without consent from Congress Management or payment to Congress Management, Congress Plaza assigned the Second Mortgage to Congress 1010, LLC ("Congress 1010") as to all Six Parcels; the assignment was recorded in the Official Records of Palm Beach County on or about January 14, 2014. On the same day, Congress 1010 executed a satisfaction of the Second Mortgage as to all Six Parcels, which was recorded on or about December 6, 2012. Congress Plaza, however, continued to make payments towards the Subject Note and Mortgage for approximately two years.

14.     On or about September 20, 2013, Congress Plaza executed a deed conveying one of the Six Parcels--that one ending in 0350--to Congress 1010. The deed was recorded on or about that same day. In turn, Congress 1010 executed a deed conveying that same parcel to S&J Property Holdings, LLC on or about November 26, 2013; the deed was recorded on or about December 11, 2013.

15.     At its Members' Meeting in April 2014, Plaintiff, as sole owner and member of Congress Management, assigned the Subject Note and Mortgage to himself, personally. Due to the time necessary to obtain an appointment at the U.S. Consulate in Germany, Plaintiff did not execute the Assignment until November 2014. That assignment was recorded on or about December 5, 2015. (Copy of Minutes and Assignment Attached as **"Composite B, Exhibit 3."**)

16.     On or about August 7, 2014, Congress Management issued a letter to Barry Roderman, who is counsel for Congress Plaza, directing that all future mortgage payments

Dude v. Congress Plaza, LLC • Complaint

should be made to Plaintiff personally in Germany. On or about August 13, 2014, Congress Plaza submitted payment to Plaintiff, along with a letter acknowledging the instructions in the August 7, 2014 letter. (A copy of the August 7 and August 13 letters are attached as **Exhibit D.**)

17.     Around November 2014, Congress Plaza ceased to make payments towards the Subject Note and Mortgage. Since that time, no money has been paid to either Congress Management or to Plaintiff individually, and the Subject Mortgage is scheduled to balloon in May 2017.

18.     Plaintiff voluntarily dissolved Congress Management on or about March 10, 2015 and did not reinstate the company within 120 days as required by Fla. Stat. § 605.0708(1). Accordingly, Plaintiff is now the owner of any assets previously held by Congress Management by virtue of his being the sole member of that LLC.

19.     The Plaintiff has retained the undersigned counsel in this matter and is obligated to pay his attorney a reasonable fee for services.

### COUNT I
### Breach of Contract

20.     Plaintiff incorporates the facts stated in Paragraphs 6-19 into this Count I.

21.     Congress Management and Congress Plaza entered into the Agreement on or about May 28, 2010. In consideration of its purchase of the Second Mortgage under that Agreement, Congress Plaza agreed to pay to Congress Management the total sum of $2.48 million. In partial payment thereof, Congress Plaza executed the Subject Note for $2.31 million, secured by the Subject Mortgage against the Six Parcels, in favor of Congress Management, LLC. All conditions precedent have been performed and waived.

22.     Upon execution of the Agreement, Congress Plaza was considered the owner of the Second Mortgage as long as the parties did not default on the Agreement. (**Exhibit A,**

Agreement, ¶ 3.)

23.    Congress Plaza's obligations under that Agreement included full payment of the Subject Note and Mortgage according to the schedule described therein. (**Exhibit A**, Agreement, ¶ 9.)

24.    Assignment of the Second Mortgage was predicated on Congress Plaza's full performance of its obligations under the Agreement. Per the terms of the Agreement, Congress Plaza purchased the Second Mortgage from Congress Management for consideration of $2.48 million and agreed to foreclose the Second Mortgage as to the Six Parcels. Congress Plaza issued the Subject Note as partial payment. Performance of the contract is incomplete until the Subject Note is paid in full; Plaintiff, as the sole owner of the now-dissolved Congress Management has not enjoyed the full benefit of the bargain.

25.    By failure to make monthly installment payments to the holder of the Subject Note and Mortgage, Congress Plaza has not fulfilled its obligations, resulting in a material breach of the Agreement.

26.    As a result of Congress Plaza's material breach, Plaintiff has incurred damages in the amount of $2,899,356.10, which is the outstanding principal of the note plus interest.

27.    Due to Congress Plaza's material breach, the assignment of the Second Mortgage from Congress Management to Congress Plaza, and any subsequent assignments and satisfactions of that Note by Congress Plaza and its heirs and assigns, are null and void.

28.    Plaintiff was the sole member of Congress Management, which is now dissolved, and is therefore the proper Mortgagee of the Second Mortgage by virtue of Congress Plaza's breach of the Agreement.

29.    The Agreement provides that "[t]he prevailing party in any litigation brought

either to interpret or otherwise enforce this Agreement shall be entitled to recover their attorneys' fees and costs from the non-prevailing party." (**Exhibit A**, Agreement, ¶ 17.)

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment in favor of the Plaintiff and against the Defendants and that this Court rescind the Agreement and vacate the assignment of the Second Mortgage from Congress Management to Congress Plaza, as well as any and all subsequent assignments and satisfactions of the Subject Note and Mortgage by Defendants and their heirs and assigns, and declare Plaintiff the true holder of the Second Mortgage.

Alternatively, Plaintiff requests that this Court award Plaintiff money damages in the full amount due on the accelerated Note.

Plaintiff further requests attorneys' fees and costs and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues triable by jury.

## VERIFICATION BY PLAINTIFF

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on September 26, 2016.

Dietmar Dude, Plaintiff

## VERIFICATION BY PLAINTIFF'S AUTHORIZED AGENT

Under penalty of perjury, I declare that I am the authorized agent of Dietmar Dude, Plaintiff, that I am the person with the most knowledge of the facts alleged, that I have read the foregoing, and that the facts alleged therein are true and correct to the best of my knowledge and belief.

Executed on September 27th, 2016.

_____
Harald Dude, Authorized Agent
for Plaintiff Dietmar Dude
and Individual with Most
Knowledge of Facts Alleged

BEFORE ME, the undersigned authority on this 27th day of September, 2016 personally appeared Harald Dude, (✓ who is personally known to me or ( ) who has produced _____ as identification, and who upon being duly sworn affirms that the foregoing facts alleged in the complaint are true and correct to the best of his knowledge, information, and belief.

WITNESS my hand and official seal in Palm Beach County, Florida

**Nina Smith**
COMMISSION # FF216922
EXPIRES: April 9, 2019
WWW.AARONNOTARY.COM

_____
Notary Public, State of Florida

Respectfully Submitted on September 28th, 2016.

BELTRANO & ASSOCIATES
Counsel for Plaintiff
4495 Military Trail, Ste. 107
Jupiter, FL 33458
Telephone: (561) 799-6577
Facsimile: (561) 799-6241
E-mail: Service@beltranolaw.com

BY: _____
Aldo Beltrano, Esq.
FBN 139300

9 of 9
Dude v. Congress Plaza, LLC • Complaint

EXHIBIT "B"

IN THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

DIETMAR DUDE,

      Plaintiff,

vs.

Case: 50-2016-CA-011067-XXXX-MB
Division: AF

CONGRESS PLAZA, LLC,
a Florida Limited Liability Company;
CONGRESS 1010, LLC,
a Florida Limited Liability Company;
S&J PROPERTY HOLDINGS, LLC,
a Florida Limited Liability Company;
FENNARIO INVESTMENTS, LLC,
a Florida Limited Liability Company;
INTERNAL REVENUE SERVICE,
a Government Agency;
DAVID M. GOLDSTEIN, P.A.,
a Florida Professional Corporation;
DAVID M. GOLDSTEIN,
an Individual; and
BARRY G. RODERMAN,
an Individual,

      Defendants.

_____/

## PLAINTIFF'S AMENDED COMPLAINT

    DIETMAR DUDE, Plaintiff, ("Plaintiff"), by and through the undersigned counsel,

hereby files this Amended Complaint against the Defendants, CONGRESS PLAZA, LLC, a

Florida Limited Liability Company ("Congress Plaza"); CONGRESS 1010, LLC, a Florida

Limited Liability Company ("Congress 1010"); S&J PROPERTY HOLDINGS, LLC ("S&J"),

which is named as a nominal defendant; FENNARIO INVESTMENTS, LLC, a Florida Limited

Liability Company ("Fennario"), which is named as a nominal defendant; the INTERNAL

REVENUE SERVICE, a government agency ("IRS"), which is named as a nominal defendant;

DAVID M. GOLDSTEIN, P.A., a Florida Professional Corporation ("Goldstein Law"), DAVID

M. GOLDSTEIN, an individual, and BARRY G. RODERMAN, an individual, and alleges in support thereof:

## STATEMENT OF JURISDICTION AND VENUE

1.   The Plaintiff, at all material times, was over the age of 18, a citizen and resident of Germany, and is otherwise *sui juris*.

2.   Congress Plaza is a limited liability company organized and existing under the laws of the State of Florida, with a principle place of business in Broward County, Florida.

3.   Congress 1010 is a limited liability company organized and existing under the laws of the State of Florida, with a principle place of business in Broward County, Florida.

4.   S&J is a limited liability company organized and existing under the laws of the State of Florida, with a principle place of business located in Palm Beach County, Florida.

5.   Fennario is a limited liability company organized and existing under the laws of the State of Florida, with its principle place of business located in Miami-Dade County, Florida.

6.   The IRS is an agency of the federal government that filed federal tax liens against Harald Dude, a nonparty to this lawsuit and a resident of Palm Beach County, Florida

7.   Goldstein Law is a professional corporation organized and existing under the laws of the State of Florida, with its principle place of business located in Miami-Dade County, Florida.

8.   David M. Goldstein is an individual who, to the best of Plaintiff's knowledge, is a resident of Miami-Dade County, Florida.

9.   Barry G. Roderman is an individual who, to the best of Plaintiff's knowledge, is a resident of Broward County, Florida.

10.   This is an action for damages in excess of $15,000.00, exclusive of interest, costs,

and attorney's fees. Jurisdiction is thus proper in this Court pursuant to Florida Statute § 542.30.

11.　　The contract at issue contains a choice of venue clause which provides that the "venue for any proceeding regarding this Agreement shall lie exclusively in Palm Beach County, Florida." (See **Exhibit A,** ¶ 18.) Congress 1010, S&J, Fennario, Goldstein Law, David M. Goldstein, and Barry R. Roderman are not party to the contract at issue. However, both Congress 1010 and S&J have a principle place of business located in Palm Beach County. The property encumbered by the mortgage which Plaintiff seeks to foreclose is located in Palm Beach County, Florida. Venue is therefore proper in Palm Beach County by virtue of the Settlement Agreement's choice of venue clause, and by §§ 47.021, 47.051, Fla. Stat.

## STATEMENT OF FACTS

12.　　Plaintiff formed Congress Management, LLC ("Congress Management") on or about February 17, 2006 and voluntarily dissolved the company on or about March 10, 2015. At all material times, Plaintiff was the sole member of Congress Management and served as the Managing Member from 2010 until dissolution of the company.

13.　　Plaintiff's brother, Harald Dude, acted as agent for Plaintiff, and as registered agent for Congress Management from 2007 until the company was voluntarily dissolved. Harald Dude also acted as Manager of Congress Management from 2007 until 2010. At no material time did Harald Dude hold a membership interest in Congress Management.

14.　　On or about January 19, 2010, Congress Shopping Center, Ltd., a Florida Limited Partnership ("Congress Shopping Center"), executed a Promissory Note in favor of Congress Management in the amount of $2.33 million. The debt was secured by a mortgage against six parcels of land ("Six Parcels") located in Palm Beach County, Florida, which are identified by the following Parcel Control Numbers: (a) 00-43-43-29-05-000-0090; (b) 00-43-43-29-05-000-

0150; (c) 00-43-43-29-05-000-0160; (d) 00-43-43-29-05-000-0190; (e) 00-43-43-29-05-000-0200; and (f) 00-43-43-29-05-000-0350. This mortgage was recorded in the Official Records of Palm Beach County on or about January 22, 2010. (The Note and Mortgage described in this Paragraph is hereafter referred to as the "Jeff George Mortgage.")

15.    On or about May 28, 2010, Congress Plaza entered into a Settlement Agreement ("Agreement") with Congress Management. (A copy is attached as **Exhibit A**.) Pursuant to that Agreement, Congress Plaza agreed to purchase the Jeff George Mortgage. As partial payment, Congress Plaza executed a Promissory Note in the amount of $2.31 million secured by a mortgage against the same Six Parcels which secured the Jeff George Mortgage. (The partial payment is hereinafter referred as the "Subject Note and Mortgage" or "Plaintiff's mortgage," true and correct copies of which are attached as **Composite B, Exhibits 1 and 2**). Congress Management in turn assigned the Jeff George Mortgage to Congress Plaza, which did not record the Assignment in the Official Records of Palm Beach County. (A copy of the Jeff George Mortgage is attached as **Composite C, Exhibit 1**, the Assignment from Congress Management to Congress Plaza is attached as **Composite C, Exhibit 2**.)

16.    On or about July 21, 2010, Congress Shopping Center executed a deed conveying the Six Parcels to Congress Plaza in fee simple absolute. The deed was recorded on or about October 5, 2010. By virtue of this deed, there was unity of title to the Six Parcels and the Jeff George Mortgage; the Subject Note and Mortgage was junior only to that Flagler Bank mortgage which was recorded on or about August 7, 2001 and has since, to the best of Plaintiff's information and belief been assigned to and paid off by Congress 1010.

17.    On or about October 15, 2012, Congress Plaza requested that Congress Management satisfy the Subject Note and Mortgage as to the parcels ending in 0190, 0200, and

0350 in exchange for an initial payment of $400,000 and a modification of the terms of payment with regard to the remaining principal balance on the Subject Note ("Requested Modification"). (A copy of the Requested Modification is attached as **Exhibit D.**) Congress Management refused to sign the Requested Modification. The Requested Modification remains unsigned by Congress Management, Plaintiff, or Plaintiff's agent, Harald Dude. Congress Management did accept the $400,000.00 strictly as payment towards the principle of the debt. Further principle payments as contemplated by the Requested Modification were not made by Congress Plaza, and Congress Management did not consent to the Satisfaction of the Subject Note and Mortgage as to the parcels ending in 0190, 0200, and 0350. Regardless, the Requested Modification is considered a credit agreement and is unenforceable due to non-compliance with the Statute of Frauds. *See Vargas v. Deutshe Bank Nat'l Trust Co.,* 104 So. 3d 1156, 1168 (Fla. 3 App. Dist. 2013) (quoting § 687.0304(2), Fla. Stat., "a debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and *is signed by the creditor and the debtor*." (emphasis added)); *Id.* (citing *Fenn v. Litton Loan Servicing LP,* No. 6:10-cv-965-ORL-28DAB, 2010 WL 8318866, at *2 (M.D. Fla. Dec. 10, 2010), which "stat[ed] that a loan modification agreement is an agreement 'to lend money and extend credit' under section 687.0304.").

18.     On or about October 22, 2012, Barry G. Roderman, Congress Plaza's managing member and its current counsel, formed Congress 1010, LLC. Mr. Roderman has since acted as the manager and registered agent of Congress 1010.

19.     On or about October 29, 2012, Congress Plaza executed a deed purporting to convey the parcels ending in 0190, 0200, and 0350 to S&J Property Holdings, LLC; however, that deed was recorded only as to the parcels ending in 0190 and 0200. Moreover, the deed was

executed without the consent of or payment to Congress Management, which was owed payments on the Subject Note and Mortgage. (Warranty Deeds attached as **Exhibit E**.)

20.     On or about December 5, 2012, and without consent from Congress Management or payment to Congress Management, Congress Plaza assigned the Jeff George Mortgage to Congress 1010 as to all Six Parcels. The assignment was recorded in the Official Records of Palm Beach County on or about January 14, 2014. (A copy of the Assignment is attached as **Composite C, Exhibit 2.**)

21.     Barry G. Roderman, Congress Plaza's managing member and attorney, executed the Assignment on behalf of Congress Plaza.   At this time, Mr. Roderman had personal and actual knowledge of the Settlement Agreement and of the existence and validity of the Subject Note and Mortgage (See **Comp. B., Ex. 1 and 2.**)

22.     Paragraph 3 of the Assignment of the Jeff George Mortgage from Congress Plaza to Congress 1010 provides that Congress Plaza "represents, warrants, and covenants that (a) [Congress Plaza] owns the Loan Documents *free and clear of all liens and encumbrances . . .* and (c) . . . has *full power and authority to assign the Loan Documents and to enter into this Assignment and perform its obligations thereunder.*" (**Comp. C, Ex. 2,** Assignment, ¶ 3) (emphasis added). With this statement, Congress Plaza knowingly misrepresented its position insofar as its right to act as owner of the loan documents depended upon it remaining current on its obligations to make payment towards the Subject Note and Mortgage, effectively concealing the existence of the Agreement and the Subject Note and Mortgage from S&J.

23.     On or about December 5, 2012, Congress 1010 executed a satisfaction of the Jeff George Mortgage as to all Six Parcels, which was recorded on or about December 6, 2012. (A copy of the Satisfaction is attached as **Composite C, Exhibit 3.**)

24.    Barry G. Roderman, Congress 1010's manager and registered agent, executed the Satisfaction on behalf of Congress 1010.

25.    Goldstein Law acted as title agent in the sale of parcels 0190, 0200, and 0350 from Congress Plaza to S&J. During this time, David M. Goldstein, Esq., its director and the person who actually prepared title, had personal and actual knowledge of the Settlement Agreement and of the Subject Note and Mortgage.

26.    On or about September 20, 2013, Congress Plaza executed a deed conveying one of the Six Parcels--that one ending in 0350--to Congress 1010. The deed was recorded on or about that same day. In turn, Congress 1010 executed a deed conveying that same parcel to S&J Property Holdings, LLC on or about November 26, 2013; the deed was recorded on or about December 11, 2013. (Warranty Deeds attached as **Exhibit E**.)

27.    Based upon information and belief, S&J partitioned the parcel ending in 0350 into two distinct parcels sometime after September 20, 2013. The two parcels are identifiable by their Palm Beach County Parcel Control Numbers: (a) 00-43-43-29-05-000-0350 and (b) 0043-43-29-05-000-0370. (Warranty Deeds attached as **Exhibit E**.)

28.    At its Members' Meeting in April 2014, Plaintiff, as sole owner and member of Congress Management, assigned the Subject Note and Mortgage to himself, personally. Due to the time necessary to obtain an appointment at the U.S. Consulate in Germany, Plaintiff did not execute the Assignment until November 2014. That assignment was recorded on or about December 5, 2015. (Copy of Minutes and Assignment Attached as **"Composite B, Exhibit 3."**).

29.    On or about August 7, 2014, Congress Management issued a letter to Barry G. Roderman, in his capacity as managing member of and counsel for Congress Plaza, directing that all future mortgage payments should be made to Plaintiff personally in Germany. On or about

August 13, 2014, Congress Plaza submitted payment to Plaintiff, along with a letter acknowledging the instructions in the August 7, 2014 letter. (A copy of the August 7th and August 13th letters are attached as **Exhibit F.**)

30.     In or around November 2014, Congress Plaza ceased to make payments towards the Subject Note and Mortgage. Since that time, no money has been paid to either Congress Management or to Plaintiff individually. About that time, Congress Management also discovered that the Jeff George Mortgage had been satisfied as to all six parcels.

31.     Plaintiff voluntarily dissolved Congress Management on or about March 10, 2015 and did not reinstate the company within 120 days as required by Fla. Stat. § 605.0708(1). Accordingly, Plaintiff is now the owner of any assets previously held by Congress Management by virtue of being the sole member of that LLC.

32.     The Plaintiff has retained the undersigned counsel in this matter and is obligated to pay his attorney a reasonable fee for services.

**COUNT I**
**Request for Declaratory Judgment**

33.     Plaintiff incorporates the facts set out in Paragraphs 12-32 into this Count I.

34.     In April 2014, Congress Management assigned the Subject Note and Mortgage to Plaintiff for good and valuable consideration. However, the assignment was executed without witnesses as the U.S. Consulate in Germany does not provide witnesses, and was therefore executed incorrectly. A corrective assignment was executed on or about November 21, 2014. Plaintiff holds the Subject Note and Mortgage to Plaintiff in his individual capacity. That assignment was recorded on or about December 5, 2015. (Assignment, **Comp. B, Exh. 3**).

36.     On or about August 7, 2014, Plaintiff issued a letter to Congress Plaza directing that all payments toward the Subject Note and Mortgage be made directly to Plaintiff as the sole

Dude v. Congress Plaza, LLC • Amended Complaint

member of Congress Management. Per that letter, Congress Plaza remitted the installment payments due in August 2014 and in September 2014 directly to Plaintiff.

37.     At some point in 2014, the IRS determined that Congress Management was the alter ego of its manager and registered agent, Harald Dude. Pursuant to that determination, Mr. Steven Crimmins of the IRS personally served notices of levy upon Congress Plaza on or about October 10, 2014. A copy of the Notice of Levy is attached as **Exhibit I**.

38.     The IRS directed that all future payments toward the Subject Note and Mortgage from Thomas Farese or Congress Plaza must be made to Steven Crimmins of the IRS, beginning immediately. Crimmins warned that payment to either Harald Dude or Congress Management would trigger legal action and penalties against Thomas Farese and Congress Plaza.

WHEREFORE, Plaintiff requests this Court to enter a declaratory judgment that Congress Management, the first holder of the Subject Note and Mortgage, was forever dissolved, that Plaintiff is the sole holder of the Subject Note and Mortgage, that Plaintiff's brother, Harald Dude has no interest in the Subject Note and Mortgage or in the outcome of these proceedings, and that the IRS cannot collect against Harald Dude from a judgment against Defendants because it has no legal lien on the Subject Note and Mortgage.

## COUNT II
### Breach of Contract Against Congress Plaza, LLC

39.     Plaintiff incorporates the facts stated in Paragraphs 12-32 into this Count II.

40.     Congress Management and Congress Plaza entered into the Agreement on or about May 28, 2010. In consideration of its purchase of the Second Mortgage under that Agreement, Congress Plaza agreed to pay to Congress Management the total sum of $2.48 million. In partial payment thereof, Congress Plaza executed the Subject Note for $2.31 million,

secured by the Subject Mortgage against the Six Parcels, in favor of Congress Management, LLC. All conditions precedent have been performed and waived.

41.     Upon execution of the Agreement, Congress Plaza was considered the owner of the Second Mortgage as long as the parties did not default on the Agreement. (**Exhibit A,** Agreement, ¶ 3.)

42.     Congress Plaza's obligations under that Agreement included full payment of the Subject Note and Mortgage according to the schedule described therein. (**Exhibit A,** Agreement, ¶ 9.)

43.     Assignment of the Jeff George Mortgage was predicated on Congress Plaza's full performance of its obligations under the Agreement. Per the terms of the Agreement, Congress Plaza purchased the Jeff George Mortgage from Congress Management for consideration of $2.48 million and agreed to foreclose the Second Mortgage as to the Six Parcels. Congress Plaza issued the Subject Note as partial payment. Performance of the contract is incomplete until the Subject Note is paid in full; Plaintiff, as the sole owner of the now-dissolved Congress Management has not enjoyed the full benefit of the bargain.

44.     By failure to make monthly installment payments to the holder of the Subject Note and Mortgage, Congress Plaza has not fulfilled its obligations, resulting in a material breach of the Agreement.

45.     As a result of Congress Plaza's material breach, Plaintiff has incurred damages in the amount of $2,899,356.10, which is the outstanding principal of the note plus interest.

46.     The Agreement provides that "[t]he prevailing party in any litigation brought either to interpret or otherwise enforce this Agreement shall be entitled to recover their attorneys' fees and costs from the non-prevailing party." (**Exhibit A,** Agreement, ¶ 17.)

WHEREFORE, Plaintiff respectfully requests this Court enter a judgment in favor of the Plaintiff and against the Defendants and award Plaintiff money damages in the full amount due on the accelerated Note. Plaintiff further requests attorneys' fees and costs and such other relief as this Court deems just and proper.

**COUNT III**
**Foreclosure of Mortgage Against Congress Plaza, LLC, Fennario Investments, LLC, and S&J Property Holdings, LLC**

47.     Plaintiff incorporates the facts stated in Paragraphs 12-32 into this Count III.

48.     Plaintiff is the owner and holder of the Subject Note and Mortgage and maintains the right to enforce all interests therein, including but not limited to the right to maintain this foreclosure action, by virtue of an unconditional transfer to the Plaintiff of all such interests, which occurred prior to the filing of this action. (See **Comp. B, Ex. 3,** Assignment.)

49.     The Subject Mortgage is current, in full force and effect, and due. (Affidavit of Current Mortgage attached as **Composite B, Exhibit 4.**)

50.     The fact that Plaintiff delayed recording the Subject Note and Mortgage does not prevent Plaintiff from now enforcing the mortgage. *Gervetz v. Gervetz*, 566 So. 2d 541, 544 (Fla. App. 3 Dist. 1990). Per Paragraph 8 of the Settlement Agreement (see **Exhibit A**), Congress Plaza was to advance the full cost of the fees necessary to record the Subject Note and Mortgage and would receive a credit towards the balloon payment due in May 2017 of 50 percent of the amount of recording fees. On October 26, 2016, Plaintiff, through the undersigned counsel, requested the recording fees from Congress Plaza in a letter delivered via certified mail and e-mail. Congress Plaza refused. (Letter and e-mails attached as **Exhibit H.**)

51.     Florida Statute § 695.01(1) provides that "no . . . mortgage of real property . . . shall be good and effectual in law or equity against creditors or subsequent purchasers for

valuable consideration *and without notice* unless the same be recorded according to law."
(Emphasis added.) For the following reasons, Plaintiff alleges that his mortgage is enforceable
against the parcels now owned by S&J even though the mortgage was recorded after the S&J
purchased those parcels:

a.    S&J purchased the parcels ending in 0190 and 0200 from Congress Plaza,
      and subsequently acquired the parcel ending in 0350 from Congress 1010.

b.    Congress Plaza, as Seller and mortgagee of Plaintiff's note, had actual
      knowledge of the Subject Note and Mortgage and of the Settlement
      Agreement. Barry G. Roderman, Esq., Congress Plaza's managing
      member and Congress 1010's manager, was involved in negotiating the
      Settlement Agreement and similarly had knowledge of Plaintiff's
      mortgage.

c.    While Plaintiff did not record the Subject Note and Mortgage, Congress
      Plaza also did not record the Assignment of the Jeff George mortgage
      from Congress Management to Congress Plaza. When the conveyances of
      0190, 0200, and 0350 took place, Congress Management was the record
      holder of the Jeff George mortgage.

d.    "In order to charge a person with notice of a fact he might have learned by
      inquiry, the circumstances known to him must be such as should
      reasonably suggest inquiry and lead him to inquiry." *Chatlos v.
      McPherson,* 95 So. 2d 506, 509 (Fla. 1957) (citing *Sapp v. Warner,* 105
      Fla. 245; *Rinehart v. Phelps,* 150 Fla. 382; *Farish v. Smoot,* 58 So. 2d 534
      (Fla. 1952)). S&J was on inquiry notice of a third-party interest in the

parcels it was about to purchase, and should have been made aware of the existence of the Agreement, which is not confidential, and of the fact that the valid assignment to and satisfaction by Congress 1010 of the Jeff George mortgage was predicated upon Congress Plaza not defaulting on its obligations under the May 28 mortgage.

    e.    Congress Plaza's longtime (and present) counsel, David M. Goldstein, Esq., both helped to prepare, or knew about, the Agreement and acted as title agent in the sale of the three parcels to S&J, and therefore had a duty to disclose the existence of the Agreement and of Plaintiff's note and mortgage to the buyer, or else to withdraw. *See Daniel v. Coastal Bonded Title Co.*, 539 So. 2d 567, 568-69 (Fla. App. 5 Dist., 1989); *Askew v. Allstate Title & Abstract Co., Inc.*, 603 So. 2d 29, 31 (Fla. App. 2 Dist., 1992).

52.    Pursuant to the Subject Note and Mortgage, Plaintiff has a first priority, duly perfected lien on those Six Parcels described in the Subject Note and Mortgage, including, but not limited to, the rental income derived therefrom.

53.    Upon information and belief, the record legal title to the Six Parcels is now vested as follows:

    (a)    S&J is the owner of record of the parcels ending in 0190, 0200, and 0350; 0350 has been subdivided into parcels ending in 0350 and 0370.

    (b)    Congress Plaza is the owner of record of the parcels ending in 0160, 0150, and 0090, which are encumbered by a mortgage held by Fennario Investments, LLC.

Dude v. Congress Plaza, LLC • Amended Complaint

54. Congress Plaza has defaulted under the covenants, terms, and agreements of the Subject Note and Mortgage by failing to make the payment due in November 2014 and all subsequent payments.

55. As a result of the aforementioned default and in accordance with the provisions of the Subject Note, Plaintiff elected to accelerate the maturity of the note and declared the entire unpaid balance immediately due and payable. Plaintiff delivered to Congress Plaza the Notice of Acceleration via Certified Mail, Return Receipt Requested, on August 5, 2016, and via e-mail. (Copy of Notice attached as **Exhibit G.**)

56. Congress Plaza has failed to cure the default by remitting payment of the entire amount of indebtedness within the allotted thirty (30) days, and did not contact Plaintiff's counsel to make alternative payment arrangements within that same time period.

57. Under the terms of the Note, $2,899,356.10, plus additional interests, fees, and costs are due and owing to Plaintiff.

58. In order to protect its security, Plaintiff may have advanced and paid ad valorem taxes, premiums, or insurance required by the Subject Mortgage and other necessary costs, or may be required to make such advances during the pendency of this action. Any such sum so paid will be due and owing to Plaintiff.

59. All conditions precedent to the actions asserted in this Complaint have been satisfied, waived, or otherwise discharged.

60. Congress Plaza may claim interest in the Six Parcels, as well as the parcel ending in 0370, and the rental income thereon, but such interest is subordinate to that of Plaintiff.

61. Plaintiff alleges that the claims of the remaining Defendants are secondary, junior, inferior, and subject to the prior claim of Plaintiff. More particularly, the remaining Defendants

may claim some right, title, and interest in and to the Six Parcels in the following manner:

(a)     The Defendant, FENNARIO INVESTMENTS, LLC may claim some right, title, or interest in the property herein sought to be foreclosed by virtue of the Mortgage executed by Congress Plaza against the parcels ending in 0160, 0150, and 0050, recorded May 22, 2014 at OR Book and Page 26807/1744 of the Official Records of Palm Beach County, Florida (attached as **"Exhibit H"**).

(b)     The Defendant, S&J PROPERTY HOLDINGS, LLC, may claim some right, title, or interest in the property herein sought to be foreclosed by virtue of the Warranty Deed executed by Congress Plaza on October 29, 2012 conveying title to the parcels ending in 0190 and 0200 to S&J, recorded at OR Book and Page 25681/0476 in the Official Records of Palm Beach County; and by the Special Warranty Deed executed by Congress 1010 on September 20, 2013 conveying title to the parcel ending in 0350 to S&J and recorded at OR Book and Page 26337/1179 in the Official Records of Palm Beach County, which was corrected by virtue of the execution of a second Special Warranty Deed by Congress 1010 on June 9, 2014 and recorded at OR Book and Page 26863/0005 in the Official Records of Palm Beach County, Florida, as well as interest in the parcel ending in 0370 which was previous part of 0350 (See Warranty Deeds, **Exhibit E**). However, said interest, if any, is subordinate, junior, and inferior to the lien of Plaintiff's mortgage.

62.     In addition to all other named Defendants, the unknown spouses, heirs, devisees,

grantees, assignees, creditors, trustees, successors in interest or other parties claiming an interest in the Collateral, by, through, under or against any of said Defendants, whether natural or corporate, who are not known to be dead or alive, dissolved or existing, are joined as Defendants. The claims of any said parties are subject, subordinate, and inferior to the lien of the Subject Mortgage held by Plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment to (a) permit Plaintiff to amend the Notice of Lis Pendens which is recorded in the Palm Beach County Official Records at Bk/Pg 28622/43; (c) declare that the Defendants and all persons claiming by, under or through them or any of them subsequent to the filing of an amended Notice of Lis Pendens in this action shall be barred and forever foreclosed of and from all or any action, right, title, interest, claim, lien or equity of redemption in, to, or upon the Property and each and every part thereof; (d) ascertain the amount due to Plaintiff under the Subject Note and Mortgage and award judgment to Plaintiff thereto; (e) issue orders to show cause and judgments pursuant to § 702.10, Fla. Stat.; (f) order the Six Parcels to be sold to satisfy the claims of Plaintiff under the Subject Note and Mortgage in accordance with the provisions of § 45.031, Fla. Stat.; (g) retain jurisdiction of this action to make any and all further orders and judgments as may be necessary and proper, including the issuance of a writ of possession and the entry of a deficiency decree, unless any Defendant personally liable is discharged from liability pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. § 101, et seq.; (h) award Plaintiff one-half of the cost of recording fees payable by Congress Plaza in accordance with Paragraph 8 of the Settlement Agreement; and (i) award Plaintiff attorneys fees and costs and such other relief as may be appropriate under the circumstances.

## COUNT IV
## Breach of Fiduciary Duty Against David M. Goldstein, individually, and David M. Goldstein, P.A.

63.     Plaintiff incorporates the facts stated in Paragraphs 12-32 into this Count IV.

64.     David M. Goldstein, through his law firm, David M. Goldstein, P.A., prepared title and acted as closing agent in the sale of the parcels 0190, 0200, and 0350 from Congress Plaza to S&J. As such, Mr. Goldstein was obligated to supervise the closing "in a reasonably prudent manner." *Florida Southern Abstract & Title Co. v. Bjellos*, 346 So. 2d 635, 636 (Fla. App. 2 Dist., 1977). Mr. Goldstein and Goldstein Law, as the title agent and closing agent, owed "a fiduciary duty to both the buyer and the seller, two potentially conflicting parties." *Askew v. Allstate Title & Abstract Co., Inc.*, 603 So. 2d 29, 31 (Fla. App. 2 Dist., 1992). This includes the duty to disclose all relevant material facts and "where an actual conflict arises . . . to withdraw, not to disclose." *Sudberry v. Lowke*, 403 So. 2d 1117, 1118 (Fla. App. 5 Dist., 1981); *Askew*, 603 So. 2d at 31.

65.     Mr. Goldstein, as an interest holder in and attorney for Congress Plaza, possessed personal and actual knowledge of the Settlement Agreement and of Plaintiff's Note and the Mortgage encumbering the Six Parcels, as well as personal and actual knowledge that none of those documents were recorded, while he was engaged in the preparation of title and at the time of closing.

66.     "A material fact is generally defined as one to which a reasonable person would attach importance in determining a choice of action." *Silverman v. Pitterman*, 574 So. 2d 275, 246 (Fla. App. 3 Dist., 1991). The existence of an unrecorded mortgage should lead a reasonable person to take action to satisfy or subordinate the lien, or else to potentially decline to purchase a property. This is supported by the fact that, prior to closing, Congress Plaza requested a

modification of the Settlement Agreement, including the satisfaction of Plaintiff's mortgage as to Parcels 0190, 200, and 0350. (**Exhibit D,** Requested Modification.)

67.     Mr. Goldstein's failure to disclose to S&J the existence of Plaintiff's mortgage, of which he had actual knowledge, resulted in Plaintiff's loss of priority of his lien, thereby limiting his ability to exercise his rights to foreclose upon 0190, 0200, and 0350 in order to collect monies owed to him by Congress Plaza.

68.     Plaintiff's loss of priority was a foreseeable result of Mr. Goldstein's actions.

WHEREFORE, Plaintiff respectfully requests that this court enter judgment in favor of the Plaintiff and against the defendants Mr. Goldstein and Goldstein Law and award Plaintiff money damages in an amount equal to the loss resulting from the defendants' breach of fiduciary duty. Plaintiff further requests attorneys' fees and costs and such other relief as this Court deems just and proper.

### COUNT V
### Fraud and Deceit Against Congress Plaza, LLC, Congress 1010, LLC, David Goldstein, P.A., David M. Goldstein, individually, and Barry G. Roderman, individually

69.     Plaintiff incorporates the facts stated in Paragraphs 12-32 into this Count IV.

70.     Barry G. Roderman executed an Assignment of the Jeff George Mortgage as the managing member of Congress Plaza, and a Satisfaction of that same mortgage as the manager of Congress 1010. David M. Goldstein prepared title through Goldstein Law, his professional corporation. "It is generally held that a corporation is vicariously liable for fraud and misrepresentation practiced by its directors or agents within the scope of their employment. A corollary to this rule is that said directors and agents are also liable individually." *Ramel v. Chasebrook Const. Co.*, 135 So. 2d 876, 883 (Fla. 2d DCA, 1961). Mr. Roderman and Mr. Goldstein are therefore properly named as individual defendants.

71.    In or around October 2012, when Congress Plaza sold the parcels ending in 0190, 0200, 0350 to S&J, Plaintiff's predecessor Congress Management held a valid, albeit unrecorded, mortgage encumbering all Six Parcels. Managing Members and Authorized Representatives of Congress Plaza, Congress 1010, and Goldstein Law possessed actual knowledge of this mortgage, as evidenced by, *inter alia*, Congress Plaza's request that the mortgage be modified as to the three parcels in advance of the sale, which Congress Management refused. (**Exhibit D**, Requested Modification).

72.    The original Jeff George Mortgage, given from Congress Shopping Center to Congress Management, was recorded. As of October 2012, when the transaction was underway, there were no other documents in the Public Records of Palm Beach County, Florida to suggest that Congress Management did not hold the Jeff George Mortgage. This should have placed S&J on inquiry notice of a potential third party interest in the property.

73.    Once on inquiry notice, David Goldstein, as the title agent and closing agent, owed a duty to disclose to S&J the existence of Plaintiff's mortgage, of which he possessed actual knowledge, or to withdraw in the event that a conflict arose between buyer and seller. *Sudberry*, 403 So. 2d at 1118; *Askew*, 603 So. 2d at 31. Mr. Goldstein did neither, and instead approved the transaction while he knew of--but did not disclose--a third party interest in the property.

74.    It is not enough to honestly satisfy S&J's inquiry to merely point to the Assignment of the Jeff George Mortgage from Congress Management to Congress Plaza, or to suggest that the Jeff George Mortgage had merged by virtue of the unity of title to the parcels and the mortgage which occurred when Congress Plaza procured the property from Congress Shopping Center in or around June 2010, because "even though a party to a transaction owes no

duty to disclose facts within his knowledge or to answer inquiries respecting such facts, if he undertakes to do so he must disclose the whole truth." *Ramel v. Chasebrook Const. Co.*, 135 So. 2d 876, 882 (Fla. 2d DCA, 1961).

75.     Congress Plaza took affirmative steps to conceal the existence of Plaintiff's mortgage. The company first approached Congress Management to request a modification of the Settlement Agreement and release of the Subject Mortgage as to the parcels ending in 0190, 0200, and 0350 on or about October 15, 2012. Congress Management refused to modify the Agreement or release the mortgage. Approximately one week later, on or about October 22, 2012, Barry G. Roderman, Congress Plaza's managing member, established Congress 1010, LLC. Mr. Roderman proceeded to assign the Jeff George Mortgage to Congress 1010 on December 5, 2012 and satisfied that mortgage on the same day on behalf of Congress 1010.

76.     The Assignment of the Jeff George Mortgage from Congress Plaza to Congress 1010 contains an affirmative representation that Congress Plaza "own[ed] the Loan Documents free and clear of all liens and encumbrances . . . and (c) . . . has full power and authority to assign the Loan Documents and to enter into this Assignment and perform its obligations thereunder." (**Comp. C, Ex. 2,** Assignment, ¶ 3). Mr. Roderman had personal and actual knowledge of the Settlement Agreement and of the Subject Note and Mortgage on December 5, 2016, including the fact that Congress Plaza owed money to Congress Management, Plaintiff's predecessor, for the Jeff George Mortgage.

77.     By concealing the existence of the Subject Note and Mortgage, Congress Plaza, Congress 1010, and their counsel intended to cause S&J to conclude that no third party held an interest in the property and to induce S&J to complete the purchase of the parcels ending in 0190, 0200, and 0350.

78.     S&J closed on the parcels ending in 0190 and 0200 on October 29, 2012. The fact

that closing occurred prior to the Assignment and Satisfaction of the Jeff George Mortgage is

further suggestive of the fact that Congress Plaza, Congress 1010, Barry G. Roderman, and

David M. Goldstein concealed the existence of the Subject Note and Mortgage from S&J, that

Mr. Goldstein--a title agent who owed a fiduciary duty to the buyer and to seller--approved the

transaction despite having actual knowledge of a third party interest in the parcels, and that the

defendants took affirmative action after the fact to cover their tracks.

79.     Congress Plaza conveyed 0350 to Congress 1010 on or about September 20,

2013; S&J subsequently purchased that parcel from Congress 1010 on or about November 26,

2013.

80.     S&J purchased the parcels ending in 0190, 0200, and 0350 in reliance on the

representations made by Congress Plaza, Congress 1010, Barry G. Roderman, David M.

Goldstein, and Goldstein Law. As a result, Plaintiff lost of priority of his lien, thereby limiting

his ability to exercise his rights to foreclose upon 0190, 0200, and 0350 in order to collect

monies owed to him by Congress Plaza.

81.     A title examination would have revealed the original Jeff George Mortgage from

Congress Shopping Center to Congress Management; no assignment or satisfaction of the Jeff

George Mortgage was recorded at the time, and S&J would have thus been placed on inquiry

notice of a possible third party interest in the property--namely, that Congress Management

might hold a mortgage encumbering the parcels S&J was seeking to purchase. If S&J made an

inquiry that Congress Plaza, Barry G. Roderman, and/or David M. Goldstein undertook to

answer, they were required to "disclose the whole truth." *Ramel v. Chasebrook Const. Co.*, 135

So. 2d 876, 882 (Fla. 2d DCA, 1961). The fact that The Fund issued title, that S&J closed the

Dude v. Congress Plaza, LLC • Amended Complaint

transaction, and that the Jeff George Mortgage was assigned and satisfied after the fact makes it evident that Congress Plaza, Congress 1010, Barry G. Roderman, and David M. Goldstein not only failed to disclose the existence of the Subject Note and Mortgage despite having actual knowledge of it, but took steps to actively conceal its existence from S&J.

WHEREFORE, Plaintiff respectfully requests that this court enter judgment in favor of the Plaintiff and against the defendants Congress Plaza, Congress 1010, Mr. Goldstein, Goldstein Law, and Barry G. Roderman and award Plaintiff money damages in an amount equal to Plaintiff's loss as a result of the defendants' fraudulent actions. Plaintiff further requests attorneys' fees and costs and such other relief as this Court deems just and proper.

## RESERVATION TO SEEK PUNITIVE DAMAGES

82. Plaintiff expressly reserves the right to seek punitive damages against Defendants upon a showing of evidence in the record or proffer to establish a reasonable basis to plead a claim for punitive damages pursuant to Fla. Stat. § 768.72(1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

a. Award damages against defendant Congress Plaza as specified in Count I for injuries sustained as a result of the breach of contract;

b. Foreclose Plaintiff's mortgage against all Six Parcels as specified in Count II;

c. Award damages against defendants David M. Goldstein and Goldstein Law for injuries sustained as a result of the breach of fiduciary duty as specified in Count III;

d. Award Damages against defendants Congress Plaza, Congress 1010,

Goldstein Law, David M. Goldstein, and Barry G. Roderman for injuries sustained as a result of fraud and deceit in their actions surrounding the sale of property to S&J as specified in Count IV;

e.  Reserve Plaintiff's right to seek punitive damages against the appropriate defendants upon an appropriate showing in the record;

f.  Direct defendants to pay interest at the highest rate allowable by law on the amount of damages sustained by Plaintiff as a result of Defendants' culpable conduct; and

g.  Granting such other relief as the Court may deem just and proper.

Respectfully Submitted on November 29, 2016.

**BELTRANO & ASSOCIATES**
Counsel for Plaintiff
4495 Military Trail, Ste. 107
Jupiter, FL 33458
Telephone: (561) 799-6577
Facsimile: (561) 799-6241
E-mail: Service@beltranolaw.com

BY:    /s/Aldo Beltrano
**Aldo Beltrano, Esq.**
FBN 139300

## Certificate of Service

I HERE BY CERTIFY that a true and correct copy of the foregoing was has been furnished on this 29th day of November, 2016 via Florida Courts E-Filing Portal and E-mail pursuant to Fla. R. Jud. Admin. 2.516, or via U.S. Mail to all parties or counsel of record listed below.

| **David M. Goldstein, Esq.** | **Barry G. Roderman, Esq.** |
|---|---|
| Law Offices of David M. Goldstein, P.A. | Barry G. Roderman & Associates, P.A. |
| 1125 N.E. 125th St., #302 | 633 SE 3rd Ave., Ste 4R |
| Miami, FL 33161 | Ft. Lauderdale, FL 33301 |
| david@dmgpa.com | bgr@rodermanwhite.com |

BELTRANO & ASSOCIATES
Counsel for Plaintiffs
4495 Military Trail, Ste. 107
Jupiter, FL 33458
Telephone: (561) 799-6577
Facsimile: (561) 799-6241
E-mail: Service@beltranolaw.com

BY:     /s/Aldo Beltrano

**Aldo Beltrano, Esq.**
FBN 139300
aldo@beltranolaw.com