UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-80522-Civ-Marra/Matthewman

DIETMAR DUDE,

    Plaintiff,

vs.

CONGRESS PLAZA, LLC, a Florida
Limited Liability Company, CONGRESS 1010
LLC, a Florida Limited Liability Company,
et al.,

    Defendants.
_____/

FILED by _____ D.C.

DEC 15 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY ATTORNEY BELTRANO AS COUNSEL FOR PLAINTIFFS [DE 23]

**THIS CAUSE** is before the Court upon Defendants, Congress Plaza, LLC, and Congress 1010, LLC's ("Defendants") Motion to Disqualify Attorney Beltrano as Counsel for Plaintiffs ("Motion") [DE 23]. Beltrano & Associates ("B&A"), counsel for Plaintiff, filed a Response in opposition [DE 25], with several exhibits attached. This matter was referred to the undersigned by United States District Judge Kenneth A. Marra for appropriate disposition. *See* DE 24. The undersigned held an evidentiary hearing on July 11, 2017, and August 1, 2017. The Court also heard additional argument on the Motion on December 12, 2017. This matter is now ripe for review. For the reasons set forth below, the undersigned denies Defendants' Motion.[1]

---

[1] "A United States Magistrate Judge has the authority to enter an order denying sanctions (as opposed to a report and recommendations)." *Jeudine v. City of Homestead, Florida*, No. 14-23896-CIV, 2016 WL 913261, at *1 (S.D. Fla. Mar. 9, 2016) (citing *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 683 n. 2 (S.D. Fla. 2012)). "An order on the disqualification of counsel is a non-case dispositive matter that may be handled by a magistrate judge as a pretrial duty under 28 U.S.C. § 636(b)(1)(A)." *Id.* (citing *Estate of Jones v. Beverly Health & Rehab. Servs., Inc.*, 68 F. Supp. 2d 1304 (N.D. Fla. 1999)).

## Background

In Plaintiff's 42-page Second Amended Complaint, which was filed on August 14, 2017, after the parties completed their briefing on Defendants' Motion and after the completion of the evidentiary hearing, Plaintiff alleges breach of contract against Congress Plaza, LLC and Thomas R. Farese (Count 1); foreclosure of mortgage against Congress Plaza, LLC and S&J Property Holdings, LLC (Count 2); breach of fiduciary duty against David M. Goldstein, individually, and David M. Goldstein, P.A. (Count 3); fraud and deceit against Congress, Plaza, LLC, Congress 1010, LLC, David Goldstein, P.A., David M. Goldstein, individually, Barry G. Roderman, individually, and Suzanne Farese, individually (Count 4); and civil conspiracy to commit fraud against Barry G. Roderman, David M. Goldstein, and Suzanne Farese (Count 5). [Second Amended Compl., DE 65].

The Court will provide a brief summary of underlying facts of the dispute, as alleged by Plaintiff. Plaintiff was the sole member of Congress Management, LLC, and served as its Managing Member from 2010 until the dissolution of the company on March 10, 2015. [DE 65 at ¶12]. On or about January 19, 2010, Congress Shopping Center, Ltd., executed a promissory note in favor of Congress Management, LLC, in the amount of $2.33 million, and the debt was secured by a mortgage against six parcels of land located in Palm Beach County, Florida ("the Jeff George Mortgage"). *Id.* at ¶15. This mortgage was recorded on January 22, 2010. *Id.* In the mid-2000s two state court lawsuits were filed between Harald Dude, Plaintiff's brother, Thomas R. Farese, and The Palm Steak House, LLC. *Id.* at ¶16. A settlement agreement (the "Settlement Agreement")[2] was entered into on May 28, 2010. *Id.* at ¶17. The agreement was

---

[2] The Settlement Agreement was between Thomas Farese, The Palm Steakhouse, LLC f/k/a Palm Beach Gentlemen's Club, LLC, Harald Dude, Congress Plaza, LLC, and Congress Management, LLC [DE 55-4].

2

that Congress Plaza would purchase the Jeff George Mortgage for $2.48 million. *Id.* at ¶18. A portion of the $2.48 million was a $50,000 promissory note issued to Aldo Beltrano, Plaintiff's counsel in this case, to be paid at a rate of $1,000 per month for fees owed to him by Harald Dude, Congress Management, and the Dude Family. *Id.*

Congress Management later assigned the Jeff George Mortgage to Congress Plaza, but the assignment was never recorded. [DE 65 at ¶20]. On or about July 21, 2010, Congress Shopping Center executed a deed conveying the six parcels to Congress Plaza in fee absolute. *Id.* at ¶21. This deed was recorded on October 5, 2010. *Id.* On or about September 20, 2012, Congress Plaza delivered to Congress Management a check in the amount of $400,000 signed by Barry G. Roderman for reduction payment/modification of the note. *Id.* at ¶23. Congress Management refused to sign the requested modification, but accepted the $400,000 strictly as payment towards the principle of the debt. *Id.* at ¶¶26-27. Congress Plaza began to make partial payments following the $400,000 payment. *Id.* at ¶28.

On or about October 22, 2012, Barry G. Roderman, one of Congress Plaza's managing members and its current counsel, formed Congress 1010, LLC. *Id.* at ¶31. On or about October 29, 2012, Congress Plaza executed a deed conveying three of the six parcels to S&J Property Holdings, LLC. *Id.* at ¶35. On or about December 5, 2012, Roderman executed a Satisfaction of the Jeff George Mortgage on behalf of Congress 1010. *Id.* at ¶33. On or about December 6, 2012, Congress 1010 recorded a satisfaction of the Jeff George Mortgage as to all six parcels. *Id.* at ¶36. On January 10, 2014, Roderman executed an assignment of the Jeff George Mortgage from Congress Plaza to Congress 1010. *Id.* The assignment was recorded on January 14, 2014. *Id.* at ¶38. In the fall of 2014, Congress Plaza stopped making

payments toward the note and mortgage after being served with a Notice of Levy by the IRS. *Id.* at ¶57. Defendants still owe Plaintiff $2,239,458 in principal and interest. *Id.* at ¶62.

There are several pending motions to dismiss the Second Amended Complaint. *See* DEs 66, 76, 84.

The additional relevant procedural history is as follows. The Notice of Removal [DE 1] in this case was filed on April 25, 2017. On July 17, 2017, Defendants filed a Notice of Filing Congress Plaza and Congress 1010's Answer and Affirmative Defenses and Counterclaim and Third Party Claims [DE 33]. The Counterclaim [DE 33-2] attached to the notice had been filed in the Fifteenth Judicial Circuit and in for Palm Beach County, Florida on January 10, 2017. On July 20, 2017, Plaintiff filed a Notice of Filing Dietmar Dude, Harald Dude, Aldo Beltrano, and Congress Management, LLC's Motion to Dismiss Counterclaim and Third Party Claims [DE 34]. The motion to dismiss [DE 34-1] attached to the notice had been filed in the Fifteenth Judicial Circuit and in for Palm Beach County, Florida on January 23, 2017. The Court instructed the parties at the December 12, 2017, to re-file in federal court any motions or pleadings that remain pending in the state court action and have not been rendered moot by subsequent events.

## <u>Motion</u>

Defendants are moving for an order disqualifying Aldo Beltrano, Esq., and his firm, B&A, as counsel for Plaintiff Dietmar Dude, and Cross and Counter Defendants (and necessary parties), Harald Dude (Plaintiff Dietmar Dude is, according to Defendants, the alter ego of Harald Dude), the IRS, Aldo Beltrano, and Congress Management Inc. [DE 23, p. 1]. According to Defendants, on September 28, 2016, Plaintiff filed a complaint alleging breach of

4

contract and rescission. *Id.* On November 22, 2016, Plaintiff moved to file an amended complaint while settlement negotiations had been underway through Beltrano and with Harald Dude. *Id.* According to Defendants, "the substantial portions of the breach of contract and recession [sic] claims alleged against Defendants stem from transactions to which Aldo Beltrano was a party and received a $50,000.000 payment as part of the transaction in his individual capacity." *Id.* at p. 2.

Defendants argue that Beltrano made an "erroneous and misleading statement" in his pleadings when he said that an IRS levy on Congress Plaza was no longer effective or active. [DE 23, p. 2]. Defendants explain that they recently spoke with an IRS collection agent who said that the levy is still in place. *Id.* Defendants also assert that Beltrano made an implicit promise that no further lawsuits would be filed by Harald Dude, Harald Dude's alter ego and shell companies, or Dietmar Dude in exchange for payment of $50,000.00 to Beltrano; however, Harald Dude and Beltrano breached that promise. *Id.* at p. 3. Next, Defendants contend that Beltrano was and still is the escrow agent for the transaction upon which the Amended Complaint is based. *Id.* Therefore, Defendants argue that Beltrano has a fiduciary duty to Plaintiff, the alter egos of Harald Dude, and Defendant Congress Plaza, LLC. *Id.*

Defendants argue that Beltrano will be a key witness at trial and is a cross-defendant in this case for the above reasons and because he participated in the Settlement Agreement and the underlying agreements and multiple payments made to Harald Dude, Congress Management, and Denise Dude. [DE 23, at p. 4]. Defendants state that "Beltrano's actions and conduct will form the basis for the forthcoming counter claims in this action against him for civil conspiracy and other appropriate remedy." *Id.* Additionally, Defendants claim that Beltrano was

provided with confidential information "during the preparation for and at the transaction...closing as related to the $50,000.00 payment to Beltrano." *Id.* Defendants are concerned that Beltrano told Plaintiff about all of the confidential conversations he had with Congress Plaza. *Id.* at p. 6. Defendants explain that that "Congress Plaza would have had its own counsel present at the transaction had it not believed that Beltrano would be working in the interests of both Dude and Congress Plaza after requesting and accepting the $50,000.00." *Id.* Defendants feel that Congress Plaza is a former client of Beltrano and that Beltrano should have obtained its consent before representing Plaintiff in this case. *Id.* at pp. 7-8.

### Response

First, B&A contends that Beltrano never represented Congress Plaza or its agents in the preparation and execution of the Settlement Agreement, but rather the $50,000.00 note was issued to Beltrano at the request of his client, Congress Management, for attorney's fees owed to him by Congress Management, Harald Dude, and the Dude family. [DE 25, p. 1]. In other words, the parties made the $50,000 in attorney's fees part of the purchase price for the Jeff George Note and Mortgage from Congress Management. *Id.* at pp. 1-3. B&A argues that Defendants' allegations that Beltrano was paid $50,000 for his representation of Congress Plaza in preparing and executing the Settlement Agreement are patently false as shown by the wording of the Settlement Agreement itself. *Id.* at p. 3.

With regard to the IRS levy, B&A contends that "[a]ll statements and representations made by the undersigned counsel in reference to the IRS levy have been and continue to reflect undersigned counsel's best knowledge." [DE 25, p. 4]. Next, B&A argues that the Settlement Agreement did not contemplate any promise to Congress Plaza that no further lawsuits would be

filed by Harald or Dietmar Dude in exchange for payment of $50,000 to Beltrano. *Id.* at p. 5. Rather, B&A asserts that the Settlement Agreement clearly anticipates the possibility of future litigation from the transaction in its very terms. *Id.*

B&A asserts that the "extent of Mr. Beltrano's role as escrow agent, per the agreement, is to hold original documents for safekeeping." [DE 25, p. 7]. B&A concedes that Beltrano owes the parties to the transaction a fiduciary duty, but argues that Beltrano "is able to fulfill his fiduciary duty as the escrow agent of original documents to both Congress Plaza and Congress Management, as turning over the Jeff George mortgage to Congress Plaza would not prejudice any party to this litigation." *Id.* at pp. 7-8. B&A also argues that Beltrano only acted as legal counsel for the Dude family and Congress Management when the Settlement Agreement was made with Congress Plaza, and that Beltrano has no personal stake in the outcome of this litigation, unlike Defendants Roderman and Goldstein. *Id.* at p. 9. B&A points out that Beltrano has not actually been subpoenaed as a witness, and, even if he had been, his testimony would not necessarily be prejudicial to Plaintiff such that disqualification would be warranted. *Id.* at p. 10. B&A argues that Defendants' motion is premature. *Id.*

B&A acknowledges that Beltrano represented Congress Plaza for the very limited purpose of filing the foreclosure of the Jeff George Mortgage, as contemplated by the Settlement Agreement. [DE 25, p. 12]. However, Harald Dude, individually and as agent for Congress Management, executed a letter in which he consented to Beltrano's representation of Congress Plaza for this limited purpose. *Id.* B&A also argues that Beltrano's "involvement in the foreclosure proceedings was minimal and limited to assisting Mr. Farese file the initial foreclosure complaint before Congress Plaza's present counsel took over." *Id.* at p. 14.

## Evidentiary Hearing

The undersigned held an evidentiary hearing on July 11, 2017, and August 1, 2017. Defendants called Thomas Farese as their sole witness, and B&A called Ariel J. Dorra and Aldo Beltrano as witnesses. At the evidentiary hearings, B&A introduced approximately 25 exhibits, and Defendants introduced approximately 8 exhibits. *See* DEs 32, 50, 53, 54, 55.

## Analysis and Findings of Facts and Conclusions of Law

"Disqualification of a party's chosen counsel is an extraordinary remedy not generally in the public interest—a remedy that should be employed only sparingly." *First Impressions Design & Mgmt. Inc. v. All That Style Interiors Inc.*, 122 F. Supp. 2d 1352, 1354-55 (S.D. Fla. 2000). "The party bringing the motion to disqualify bears the burden of proving grounds for disqualification." *Hermann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (citing *In re Bellsouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003)). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *Fenik v. One Water Place*, No. 3:06cv514/RV/EMT, 2007 WL 527997, at *4 (N.D. Fla., Feb. 14, 2007). "When a motion to disqualify is based on an allegation of ethical violation, the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power." *Suchite v. Kleppin*, 784 F. Supp. 2d 1343, 1344 (S.D. Fla. 2011) (internal quotations omitted).

Rather, "[t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule in order to disqualify the attorney." *Id.* "An order involving the disqualification of counsel must be tested against the standards imposed by the [Florida Bar] Rules of Professional

Conduct." *Id.* at 1346 (citing *Estright v. Bay Point Improvement Ass'n, Inc.*, 921 So.2d 810, 811 (Fla. 1st DCA 2006); quoting *Morse v. Clark*, 890 So.2d 496, 497 (Fla. 5th DCA 2004)).

"When a party's attorney becomes an 'indispensable witness' or a 'central figure' in a case, it is appropriate for a court to disqualify the attorney." *Medina v. United Christian Evangelistic Ass'n*, No. 08-22111-CIV, 2010 WL 11504325, at *2 (S.D. Fla. Jan. 14, 2010) (quoting *Fleitman v. McPherson*, 691 So. 2d 37, 38 (Fla. Dist. Ct. App. 1997)). "Disqualification, however, 'is an extraordinary remedy to be resorted to only sparingly.'" *Id.*

The Court will now consider Defendants' asserted bases for disqualification of Plaintiff's counsel.

### A. Beltrano as a Witness for Trial and as a Counter-Claim Defendant

Defendants' argument that Aldo Beltrano should be disqualified because he is a counter-claim defendant and may be a witness at trial is both premature and overly speculative as there is a motion to dismiss the counterclaim and third party claims pending, and it has not been definitively determined which portions of the case, if any, will survive a motion to dismiss and a motion for summary judgment, and then proceed to trial. If the case goes to a jury trial, the disqualification issues can be re-assessed at a later date when the true confines of the case are clear and not speculative.

Moreover, Defendants' counsel in this case, David M. Goldstein, P.A., David M. Goldstein, and Barry G. Roderman are defendants in the Second Amended Complaint and also represent their co-defendants. [DE 65]. In the Second Amended Complaint, Plaintiff alleges breach of fiduciary duty against David M. Goldstein, PA., and David M. Goldstein, fraud and deceit against David M. Goldstein, PA., David M. Goldstein, and Barry G. Roderman, and civil

conspiracy against David M. Goldstein and Barry G. Roderman. While there are pending motions to dismiss the Second Amended Complaint, it is clear that defense counsel are also currently parties in this case and that may also be called as witnesses at trial given their roles in the facts that underlie this case. If the Court disqualified Plaintiff's counsel because he is a party and a possible trial witness, the Court could also disqualify Defendants' counsel on the same bases. However, it is clearly premature at this juncture to disqualify any of the parties' counsel.

### B. Confidential Information Given to Beltrano by Congress Plaza

Thomas Farese, the manager for Congress Plaza, explicitly testified at the evidentiary hearing that Beltrano never represented him except for three or four days when Beltrano represented Congress Plaza in a foreclosure proceeding pursuant to an agreement stated in the Settlement Agreement. [DE 59, p. 77, lines 15-21]. Beltrano similarly testified that he never represented Farese except for when he filed the foreclosure as agreed to by the parties who entered into the Settlement Agreement. [DE 60, p. 135, lines 17-20].

The testimony at the evidentiary hearing also generally established that, while Farese was asked either by Beltrano—as testified to by Farese—or by Plaintiff—as testified to by Beltrano—not to bring counsel to the execution of the Settlement Agreement, Farese had agreed that the parties would be more likely to resolve their legal issues without defense counsel present. *See, e.g.*, DE 60, p. 146, lines 10-22. It was also established that an attorney, Ron Gache, Esq., helped draft the 2010 Settlement Agreement, *see, e.g.*, DE 60, p. 146, lines 23-25; p. 147, lines 1-5. Thus, it was not as if Beltrano unilaterally drafted the entire Settlement Agreement and then tried to trick or coerce Farese into signing it without representation.

10

Florida Bar Rule 4-4.2 states in relevant part that, "[i]n representing a client, a lawyer must not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." R. Regulating Fla. Bar 4-4.2. Here, Beltrano testified that Farese often represents himself in matters and that he often would contact Beltrano directly. [DE 60, p. 151, lines 15-23]. Due to the longstanding relationship of all of the parties and their counsel, this conduct was at least implicitly, if not explicitly, ratified by all of the individuals involved. It seems that Farese, his counsel, and Beltrano were all aware that Farese sometimes chose to discuss the case with opposing counsel directly. The evidence before the Court, and particularly Farese's testimony at the evidentiary hearing, established that Farese is a sophisticated businessman who often opts to confer and communicate directly with opposing counsel in the cases in which he is involved.

Moreover, Farese explicitly testified that he knew Beltrano did not represent him or Congress Plaza (with the exception of the very brief foreclosure proceeding explained further below) and that he sometimes excluded Congress Plaza's counsel from meetings when he wanted to make sure a deal got completed. There is also no evidence that Congress Plaza or Farese gave confidential information to Beltrano that he then improperly used.

### C. The IRS Levy and Alter Ego Claims and Defendants' Unclean Hands Argument

In their Motion, Defendants seem to argue that the IRS has served a levy that is still binding on Congress Plaza and its management which states that Plaintiff owes the IRS several million dollars and "further claims that Congress Management, LLC and Dietmar Dude are alter egos of Harald Dude." [DE 23, p. 2]. Defendants further contend that IRS agent Steve

Crimmins had recently confirmed that the levy is still binding, while Beltrano has tried to mislead Defendants in Plaintiff's pleadings by stating that Agent Crimmins has said that the levy is no longer effective or active. *Id.*

Ariel J. Dorra, an accountant, testified on behalf of Plaintiff that he met with Agent Crimmins and specifically questioned Agent Crimmins as to whether the levy was still in place. [DE 60, p. 114, lines 13-17]. According to Mr. Dorra, Agent Crimmins stated that that levy had expired and that he was not pursuing any collection actions. *Id.* Defendants have not provided any evidence that Beltrano explicitly lied about the IRS levy and whether it is currently effective or active. Furthermore, even if Beltrano had inadvertently misled Defendants or mischaracterized the status of the levy, this would not be an automatic ground for his disqualification.

### D. Beltrano as Escrow Agent

The Settlement Agreement [DE 55-4] stated that Aldo Beltrano was required to "hold the original Jeff George Note in escrow until such time as Congress Plaza requests possession of that note solely in connection with it being filed with the court in connection with the foreclosure of that note and its corresponding mortgage." [DE 55-4 at p. 2, ¶ 3]. The Settlement Agreement also stated that Beltrano would "thereafter keep the original note in his possession as all times thereafter until it is required by Congress Plaza for filing in the court file in connection with the anticipated foreclosure of the Jeff George Mortgage." *Id.* The Settlement Agreement later required that Beltrano hold the "New Second Mortgage in escrow to be recorded in the public records immediately upon Congress Plaza becoming the owner of the Property." [DE 55-4 at p. 3, ¶ 8].

The Court finds that, while Beltrano was named escrow agent in the Settlement Agreement, his role as escrow agent was limited and constrained by the very language of the Settlement Agreement. Therefore, he should not be disqualified solely on the basis that the Settlement Agreement named him escrow agent. Additionally, Defendants contend that Beltrano breached his fiduciary duty as escrow agent by failing to record the mortgage that Congress Plaza gave to Congress Management against six parcels of land. However, Paragraph 8 of the Settlement Agreement required that the cost of recording the mortgage should be split equally between Congress Management and Congress Plaza and that Congress Plaza should advance the entire cost of recording the mortgage and would later receive a credit. [DE 55-4 at p. 3, ¶8]. The evidence and testimony show that Beltrano was never provided with any funds with which to record the mortgage. [DE 60, p. 144, lines 22-24]. As escrow agent, Beltrano had no duty to pay out of his pocket the costs of recording the mortgage. Beltrano should not be disqualified in this case because he failed to record a mortgage despite receiving no funds to do so.

### E. Beltrano Represented Both Plaintiff and Defendant Congress Plaza in a Transaction

Florida Bar Rule 4-1.9 states in relevant part that a lawyer "who has formerly represented a client in a matter" must not later "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the client gives informed consent", and the lawyer must not later "use information relating to the representation to the disadvantage of the former client except at these rules would permit or require with respect to a client or when the information has become generally known." R. Regulating Fla. Bar 4-1.9.

13

Here, the Settlement Agreement [DE55-4] specified that, "[i]mmediately following the instant closing and execution of the instant agreement, Congress Plaza will immediately begin foreclosure proceedings...in order to obtain ownership of the Property through judicial foreclosure." [DE 55-4 at p. 2, ¶ 4]. At the evidentiary hearing, Aldo Beltrano testified that Defendants' counsel, David Goldstein, was in California shortly after the Settlement Agreement was executed and could not file the foreclosure, so Beltrano substituted in to the case and filed it instead. [DE 60, p. 150, lines 23-25; p. 151, lines 1-5]. He further stated that Farese agreed to his filing of the foreclosure complaint. [DE 60, p. 150, lines 23-25; p. 151, lines 1-8].

During Thomas Farese's testimony, he admitted that he signed a letter from Beltrano stating that, pursuant to Harald Dude's authorization and waiver of conflict, and pursuant to the Settlement Agreement, Beltrano was to file the foreclosure, and then one of Defendants' attorneys would substitute into the foreclosure case. [DE 60, p. 37, lines 22-25; p. 38, lines 1-6]. Plaintiff's Exhibit 11 [DE 55-11] is the letter dated June 4, 2010, from Beltrano to Farese. Farese signed the letter at the bottom, demonstrating that he waived any conflict. [DE 55-11]. The evidence introduced by Plaintiff, namely Plaintiff's Exhibits 12 (the Verified Complaint to Foreclose on the Jeff George Mortgage [DE 55-12]) and Plaintiff's Exhibit 15 (the Stipulation to Substitution of Counsel [DE 55-15]) also show that Beltrano was only involved in the foreclosure case for approximately two days. This was merely to assist in the resolution of the matter pursuant to the Settlement Agreement.

Based on the evidence before the Court, the Court cannot find that Aldo Beltrano violated the Florida Bar Rules or that he should be disqualified as he was only involved in the foreclosure case for a few days, his limited involvement in the foreclosure case was ministerial and merely to

14

assist in the settlement of the matter pursuant to the terms of the Settlement Agreement, he had the knowledge and consent of the parties, and he obtained no privileged or confidential information from Defendants as he already had the necessary information to file the foreclosure complaint from his own client.

### F. The $50,000 Payment to Beltrano

The Settlement Agreement [DE 55-4] stated in relevant part that "[a]s payment to Congress Management for Congress Plaza's purchase off the Jeff George Note and Mortgage, Congress Plaza agrees to pay the Purchase Price as follows: At closing, Congress Plaza will pay to Congress Management...a second promissory note made payable to Mr. Beltrano in the sum of $50,000." [DE 55-4 at p. 2, ¶ 7]. A footnote also states that "[t]hese payments to Mr. Beltrano are deemed part of the Purchase Price, but are being paid directly to him at the request of Congress Management. [DE 55-4 at p. 3, n. 1].

Thomas Farese also testified that his understanding of the $50,000 payment to Aldo Beltrano was that Beltrano was not getting paid by his client, Harald Dude. [DE 59, p. 38, lines 23-25 and p. 39, lines 1-9; DE 60, p. 89, lines 4-8]. Farese stated that the $50,000 payment to Beltrano was part of Settlement Agreement and that the Settlement Agreement explained that the payment to Beltrano was deemed part of the purchase price but was being directly paid to Beltrano at the request of Congress Management. [DE 59, p. 87, lines 19-25; DE 60, p. 89, lines 9-14]. According to Farese, he and Beltrano negotiated that Beltrano's fees would be paid by Congress Plaza in the purchase of the mortgage going back to 2009 or 2010. [DE 60, p. 12, lines 24-25; p. 13, lines 1-3].

There is no evidence that the $50,000 paid to Beltrano as a part of the Settlement

Agreement served any nefarious purpose. It was a term of the settlement that the parties agreed to, and Farese clearly understood that the money was being paid as part of the purchase price because Beltrano's own client was not paying him.

## Conclusion

In light of the foregoing, Defendants have not met their burden of establishing that Aldo Beltrano should be disqualified, and Defendants' Motion to Disqualify Attorney Beltrano as Counsel for Plaintiffs [DE 23] is **DENIED**. This disqualification issue, as well as any disqualification issue which may be applicable to Defendants' counsel, can be raised by the parties again after the dispositive motions are ruled upon and prior to trial, if necessary.

**DONE AND ORDERED** in Chambers this 15th day of December, 2017 at West Palm Beach in the Southern District of Florida.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE